IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SONOMATIC LIMITED, | § |
| *Plaintiff*, | § |
| v. | § CIVIL ACTION NO. 4:23-CV-4603 |
| INNETIQS GMBH, | § |
| *Defendant*, | § |

## ORDER

Pending before the Court is Defendant InnetiQs GmbH's ("Defendant" or "InnetiQs") Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. No. 16). Plaintiff Sonomatic Limited ("Plaintiff" or "Sonomatic") responded (Doc. No. 23), Defendant replied (Doc. No. 27), and Plaintiff filed a surreply (Doc. No. 30). Having considered the briefings and applicable law, the Court hereby **GRANTS** Defendant's motion. (Doc. No. 16).

### I.  Background

This is a case regarding an alleged infringement of a patent. (Doc. No. 1). Plaintiff alleges that it is the assignee of two patents, United States Patent Numbers 8,536,860 and 9,213,018 (collectively, the "Patents"). (*Id.* at 2). The Patents allegedly cover technologies involving the use of electrical currents that are utilized in offshore energy markets. (*Id.*). Sonomatic claims that Defendant, a German corporation with no regular place of business in Texas, infringed upon its patented "methods and apparatuses" (the "Accused Product"). (*Id.* at 3). As such, Sonomatic brought the instant suit against InnetiQs for infringement of the Patents. *See* (*Id.*). Defendant now seeks to dismiss the case for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). *See* (Doc. No. 16).

## II.     Legal Standard

"[W]ithout conducting an evidentiary hearing, the plaintiff bears the burden of establishing only a prima facie case of personal jurisdiction." *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). Generally, a court accepts the plaintiff's non-conclusory, uncontroverted allegations as true and resolves conflicts between the facts contained in the parties' affidavits in the plaintiff's favor. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001) (per curiam). The court may consider the contents of the record, including affidavits or other recognized methods of discovery, in deciding whether to exercise personal jurisdiction. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).

A federal court may exercise personal jurisdiction over a non-resident defendant if: (1) the long-arm statute of the forum state allows the exercise of personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction over that defendant is consistent with Fourteenth Amendment to the United States Constitution. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). The two-part jurisdictional inquiry collapses into a single step in this forum because the Texas long-arm statute extends to the limits of federal due process. TEX. CIV. PRAC. & REM. CODE § 17.042; *Johnston*, 523 F.3d at 609; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990). To meet the requirements of due process, the plaintiff must demonstrate: (1) that the non-resident purposely availed himself of the benefits of the forum state by establishing minimum contacts with the state; and (2) that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Mullins*, 564 F.3d at 398.

"Minimum contacts" can give rise to either specific personal jurisdiction or general personal jurisdiction. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). General personal jurisdiction exists when a non-resident defendant's contacts with the forum state are "substantial,

continuous, and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–19, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 374 (5th Cir.2003). "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007) (citation omitted). A court may exercise general jurisdiction only when a defendant is "essentially at home" in the forum. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). For a corporation, that forum is the corporation's place of incorporation and principal place of business. *Id.* at 359 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)).

The court "may exercise 'specific' jurisdiction in a suit arising out of or related to the defendant's contacts with the forum." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). The Fifth Circuit has articulated a three-step analysis for specific jurisdiction: (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or related to the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009); *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021).

Defendant argues that the Court does not have general nor specific jurisdiction over it. (Doc. No. 16 at 5). Thus, Defendant concludes, the case should be dismissed pursuant to Rule 12(b)(2). (*Id.*). Plaintiff concedes that the Court does not have general personal jurisdiction over InnetiQs but contends that the Court has specific personal jurisdiction over Defendant. The Court will, therefore, focus its analysis on specific personal jurisdiction.

### III. Analysis

With respect to the first step in the specific personal jurisdiction analysis—whether the defendant has minimum contacts with the forum state—a defendant must have "purposefully availed himself of the benefits and protections of the forum state" "such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). That requirement is the "constitutional touchstone" of personal jurisdiction. *Burger King*, 471 U.S. at 474. Purposeful availment is a constitutional prerequisite for jurisdiction, regardless of where the tortious conduct occurred. *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 194 (5th Cir. 2019).

Defendant contends that its contact with Texas is "virtually nonexistent." (Doc. No. 16 at 7). Plaintiff claims that the following constitutes minimum contacts: 1) Defendant, through a representative, visited Houston, Texas multiple times "to discuss" the allegedly infringing product with Oceaneering International, Inc. ("Oceaneering"); and 2) Oceaneering makes a press release announcing that it, in collaboration with Defendant, "offers" the allegedly infringing product. (Doc. No. 23 at 6–7). Plaintiff contends that these events "indisputably show" that Defendant "purposefully directed activities at residents of this Judicial District." (*Id.* at 5).

Defendant admits that its representative visited Houston, Texas on three occasions, all of which were to attend meetings at Oceaneering's headquarters. (Doc. No. 16-1). Defendant's representative, Andreas Boenisch, testified by sworn affidavit that he attended a meeting at Oceaneering's Houston headquarters on April 22, 2022, where he met with Oceaneering's global sales director and global procurement director. (*Id.* at 2). There, he discussed "future collaboration at a high level" between InnetiQs and Oceaneering International Services Limited, a United Kingdom company ("Oceaneering UK"). Defendant contends that it met at Oceaneering's

4

headquarters in Houston only because it intended to do business with Oceaneering's affiliate, Oceaneering UK, and needed to meet with its global directors. (*Id.* at 9). In fact, Defendant signed a Supply and Collaboration Agreement (the "Collaboration Agreement") with Oceaneering UK. *See* (Doc. No. 16-2). The Collaboration Agreement is governed by the laws of England and provides for exclusive jurisdiction in the courts of London, England. (*Id.* at 8). The Collaboration Agreement was signed by the parties outside of the United States.

InnetiQs and Oceaneering UK also signed a letter of agreement to lease the Accused Product for five years (the "Lease Agreement"). *See* (Doc. No. 16-4). The Lease Agreement is governed by the laws of England and Wales and provides for exclusive jurisdiction in the courts of England and Wales. (*Id.* at 7). The Lease Agreement explicitly amends the Collaboration Agreement. (*Id.* at 2). Notably, Defendant alleges that the Accused Product has never been physically present in the United States, much less Texas. (Doc. No. 16-1 at 2). Plaintiff did not provide evidence to the contrary. Defendant produced the only two units of the Accused Product in Germany—one unit shipped for use in the North Sea near Scotland, and the second unit used in Caspian Sea near Baku, Azerbaijan. (*Id.* at 5). Both units were ultimately returned to Defendant's facility in Germany, where they remain to date.

Additionally, Plaintiff contends that Oceaneering's press release shows that Defendant "purposefully directed activities at residents of this Judicial District." (Doc. No. 23 at 2). The press release, published on Oceaneering's website, states that "Oceaneering, in collaboration with InnetiQs, offers the [Accused Product]." (Doc. No. 1-1). InnetiQs denies involvement in the press release. (Doc. No. 16 at 9). Moreover, Defendant argues that a third-party's online announcement cannot be used to establish jurisdiction.

The Court agrees with Defendant that it does not have the requisite minimum contacts with the forum for the Court to exercise specific personal jurisdiction over it. The contacts alleged by Plaintiff are insufficient. Even if InnetiQs contracted with a resident of Texas, rather than Oceaneering UK (a foreign company), that is not enough to establish minimum contacts. *Moncrief Oil Int'l, Inc. v. Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007) (citing *Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir. 1999) ("[M]erely contracting with a resident of Texas is not enough to establish minimum contacts.")). Therefore, even if the Oceaneering press release stated that Oceaneering and InnetiQs *contracted* to offer the Accused Product, rather than them simply "collaborating," that is insufficient to establish minimum contacts with the forum.

Furthermore, "[a]n exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law." *Id.* (citing *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986)). Despite the fact that Defendant may have discussed the Accused Product while in Texas, the evidence shows that Defendant never directed activities at residents of this forum. The Accused Product was never produced, tested, or sold in the United States. Indeed, the uncontroverted evidence demonstrates that the Accused Product has never entered the United States, let alone Texas. A defendant merely discussing a product that later becomes the basis of a lawsuit surely does not satisfy the required contacts necessary for a court to exercise personal jurisdiction over the defendant. To find otherwise would be an afront to decades of precedent.[1]

---

[1] Though Plaintiff does not put forth such an argument, the Court notes that the stream of commerce doctrine also is not sufficient to demonstrate purposeful availment in this case. This doctrine "recognizes that a defendant may purposely avail itself of the protection of a state's laws—and thereby will subject itself to personal jurisdiction—'by sending its goods rather than its agents' into the forum." *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 778 (5th Cir. 2018) (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882, 131 S.Ct. 2780, 180 L.Ed.2d 765 (2011)). There is no evidence to suggest that Defendant "delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state." *Zoch v. Magna Seating (Germany) GmbH*, 810 F. App'x 285, 290 (5th Cir. 2020) (citing *Ainsworth v. Moffett Eng'ring, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013)).

Since the Court finds that Defendant did not direct its activities toward the forum state nor purposefully avail itself to the privileges of conducting activities here, the Court need not consider whether Plaintiff's cause of action arises out of or related to Defendant's forum-related contacts or whether the exercise of personal jurisdiction is fair and reasonable. See *McFadin*, 587 F.3d at 759.

### IV.   Conclusion

For the foregoing reasons, the Court finds that it cannot exercise personal jurisdiction over InnetiQs. As such, the Court hereby **GRANTS** Defendant's Motion to Dismiss (Doc. No. 16), pursuant to Federal Rule of Civil Procedure 12(b)(2). Since this Order dismisses all claims against all parties, this Order constitutes a final, appealable judgment.

Signed at Houston, Texas, this __8th__ day of May, 2025.

Andrew S. Hanen
United States District Judge